Marantette v. City of Canandai Your Honor, Kevin Connell for the estate of Marantette Petitioner. Your Honor, it's my understanding May I start out with a housekeeping matter? Yes. Your, your, the letter of January 7th Yes, Your Honor. indicates that Mr. Marantette's daughter is going to be appointed as a ministrix of his, of his estate. At least that's the expectation. Has she been appointed? Your Honor, it is my understanding that the petition for limited letters has been filed and that that is, and that has been executed. So, so what took you so long in, in, in notifying this court when your client died? Your Honor, when Mr. Marantette passed away suddenly and unexpectedly on January 9th, 2019 he was survived by only three immediate family members. One being, or two of them being ineligible minors and one being a very disgruntled ex-wife. Nobody else, he, he was survived by no one else. The Does he even inherit law? Your Honor, no. The estate, the estate is being handled by a separate attorney, Mr. Schupanauer and we have been working diligently with Mr. Schupanauer over the course of the, of the full year of 2019 trying to, trying to find a way to have someone to take over the estate. Ultimately, Mr. Schupanauer notified us that under his understanding of the surrogates law that he was going to attempt to submit Pam Hamming, the ex-wife, as the administrators due to the ineligibility of his two minor children. However, Catherine, his oldest daughter, very recently turned 18 years old. When was that, just so we're all aware of it? Your Honor, I know it was in, within, it was, it was, it was within the last few months. So what, what's concerning to me and I, and perhaps I'm, I'm misunderstanding and if I am, you'll let me know. So Mr. Martinet dies. In the, in the opening brief or reply briefs, even though defendants specifically requested that we dismiss the appeal based on the failure to substitute, did you, did you mention that anything about Mr. Martinet's situation, that he died, that the problems that you're now suggesting to us orally were present? Your Honor, we were, although that may have not been submitted, we were working diligently through that process. Ultimately, it was our, it was our understanding from the Steggers v. Otto Gerdau decision from 1966, from the Second Circuit, that when the rule change to Rule 25 was made in 1955 and again amended in 1963, it was not intended to strictly apply the 90-day requirement. But you're supposed to let the Court know what's going on. That's part of your responsibility. I'm not saying you personally. And there's a feeling of a lack of, of candor. Your Honor, there certainly was not a lack of, of candor. We were attempting to address the, the merits of the case. And in the process, we were trying to deal with these, these housekeeping matters as quickly and diligently as possible. And we, we apologize. Well, they're not really housekeeping matters, right? I mean, you don't get to bring an appeal if the person who's appealing is dead, right? You've got to have a substituted party, don't you? Correct, Your Honor. And so that was identified as a problem in the Respondent's Brief. And you didn't address it in the Reply Brief, right? Your Honor, at that point, we were still attempting to resolve the issue with Mr. Schupenhauer. And that wasn't an appropriate thing to say in the Reply Brief? I take your point, Your Honor. I mean, it does seem like a lack of candor. And even now, there's no, nobody has been substituted at this point, right? It is, well, it is my understanding. It's your hope that maybe, eventually, the daughter will be authorized to do this. It's not even clear whether she will do it, but she might be authorized at some point. But that point hasn't yet arrived, right? It is my understanding she has been authorized. But what's your basis for that understanding? It is through our conversations with Mr. Schupenhauer. Mr. Schupenhauer, again, the attorney for the estate has made all assurances that Catherine has received limited letters and that she will be taking over the estate. Purposes of prosecuting this appeal? Yes, Your Honor. That's the limitation, right? That's all she's being appointed as administratrix for. Correct, Your Honor. But wait, where are these letters? You have it on good authority from a lawyer that there are these letters, but you haven't seen them. We did submit with our letter to the court the petition. Okay. But, so what's the status of the petition? You're saying it's now been granted. Is that right? It's my understanding that it is in the process of being granted, and that she will be in the position to handle this through limited letters. When? Mike, do you have any indication? Mr. Schupenhauer participated in the pre-argument negation of this court. Did they do it well in the proceedings? Were you kind to get the estate set up? Do you believe it would be set up prior to the five-year agreement? It was not. Did you learn about that after the three-year agreement was signed? So what's the answer? When? And so will you let us know immediately? Yes, Your Honor. And I just want to say it may appear as a lack of candor. Most of the issue had to do with having to deal with the very disgruntled ex-wife. She kept going back and forth, according to the conversations that I have had with Mr. Schupenhauer on whether she was willing, whether she was not willing, and through this whole process Catherine was still ineligible. So, Mr. Schupenhauer. So part of the problem is that, at least for me, is that when I read the appellate's brief, your appellate's brief, your appellate brief, it seems that there are repeated mischaracterizations of the State court proceedings. And that affects how I think of the rest of these proceedings. For instance, the brief states that the Federal due process standards were never litigated before the Fourth Department. And they weren't. The opening brief says that the appellate division issued a narrowly drafted decision dealing only with the requirements of Section 75 of the Civil Service law, and that the resolution of the Fourteenth Amendment due process standard of proof, I'm quoting, of course, was not necessary to the finality or validity of the appellate division decision. And then in your reply brief it says, there is not a shred of evidence that the constitutional issue was decided by the Fourth Department, and that the issue is necessary for valid and final decision of the merits. But when you read the Fourth Department's decision, it clearly appreciates the due process argument, and it rejects it. And its explicit language is, and I quote, due process requires application of the preponderance of the evidence standard only when the penalty of dismissal is not accompanied by some added stigma. So when we as a court read a brief, which, you know, there can be differences of view on how to interpret something that is understood. But when there are statements that, you know, respectfully to you, that mischaracterize explicit statements and holdings of a court, it raises questions of credibility in our mind. Your Honor, with respect, we do not understand the Western District's decision addressed issues of constitutional due process as, as applied. Rather, it was the issue, it were due process issues pursuant to section 75. Nowhere in the Western District decision are key phrases mentioned such as 14th interest, property interest. These are all essential elements to any constitutional due process analysis, and they are completely absent from the Western District's decision. So that gave us a good faith understanding that the Western District did not weigh those considerations. Would you like to sum up your argument? Your Honor, ultimately, this court is granted broad discretion under the Steggers v. Otto-Gerdau decision in 1966 that the 90-day requirement set out was not intended to be strictly applied, that there has been no prejudice to the City of Canandaigua in this process. Again, we had made all diligent efforts dealing with the State's attorney who was working with a very uncooperative ex-wife. And as Mr. Herron indicated, we thought that these issues, we had hoped that these issues would be resolved prior to filing of the brief, the reply brief. We had hoped that they would. They were not. And then in addition, just to indicate the level of back and forth and the mix-up from Mr. Schupenhauer, we did not until very recently realize that they had abandoned the course of, of, of replacing or substituting the ex-wife, and then they have changed complete course due to surrogate's law section 1001B, and then instead going with Catherine. So we have made diligent efforts to work with the estate's attorney. Due to the circumstances, the estate's attorney was not successful in resolving this prior to our reply brief. We apologize for any, for, for any appearance of lack of candor. But at the end of the day, we have attempted to resolve this. We have attempted to be as engaged with as much candor as possible. And we respectfully request that you, that you grant the motion. Thank you. Thank you. And you'll have one minute in rebuttal. Good morning, Your Honors. May it please the Court. Jenna Klusek, I'm here on behalf of the appellees, the city, John Goodwin, and Nancy Abdella. To address the pending motion first, the appellees understand that this Court has a great deal of discretion in matters such as this. But this is a relatively unusual case. We filed with this Court a statement of death back in February 2019, which was several weeks after the notice of appeal was filed, several weeks after the death of Mr. Marentette. And until approximately a month before this Court scheduled oral argument, there was no mention whatsoever from the appellant about the death, acknowledging the death, or even responding to our argument in our opening brief that the appeal should be dismissed for a lack of substitution. It even seems to me that the appellant didn't oppose our motion made in December to dismiss. They certainly put in an additional supplemental submission to the Court on January 6th, but there was no, in my view, actual opposition to the motion that we made on December 20th to dismiss their appeal. At the end of the day, Your Honors, it's been a year. We suggested the death on the record. We argued in our brief that the appeal should be dismissed for this basis. And there are still no letters of administration that have been issued. And I believe the papers that were filed by the appellant's attorneys on January 6th demonstrate that Ms. Marentette has been eligible since July. We respectfully request... Her 19th birthday. Correct, Your Honor. And we... And it didn't just sneak up on anybody. It comes around every July, I imagine. Correct, Your Honor. And at that point, Mr. Marentette had been deceased for approximately six months, and the appellant had already submitted their opening brief to this Court. We respectfully request a dismissal with prejudice. And contrary to counsel's assertion, it would severely prejudice the city and the other appellees. We have acted diligently at all steps to make this Court aware of Mr. Marentette's death by suggesting his death on the record and arguing it in our brief. Well, let's say that I understand your argument, but let's say that in the next week we get the information that your adversary says the petition has been granted, then wouldn't it be just as efficient to address the merits of the case? So long, Your Honor, as there was no need for additional briefing with respect to the merits of the appeal. There wouldn't be any. I don't see any reason for additional briefing necessary. If there's an administrator, at this point, we would still argue that there has been an unnecessary and inexcusable length of time and ask the Court to deny the motion to substitute. But if we grant the motion to substitute, let's go to the arguments on the merits. Thank you, Your Honor. It's our position and the district court agreed that this is a clear collateral estoppel application based on the Fourth Department's decision. The appellant has raised a very specific and discrete issue here. Whether his right to procedural due process under the Fourteenth Amendment was violated by the use of the substantial evidence standard at his civil service hearing as opposed to the preponderance of the evidence standard. This issue was raised. It was litigated extensively before the Fourth Department, and it was expressly rejected unambiguously by the Fourth Department. The Fourth Department does not use the terminology property right. The Fourth Department does not use the terminology liberty interest, but that has absolutely no impact on the collateral estoppel effect of the Fourth Department's decision. Mr. Marentette argued these issues extensively in his brief. We argued these issues at oral argument, and the Fourth Department rejected that. This Court in the McBride case said the ultimate propriety of the police officer in that case termination had been resolved by the lower, by the State court in the Article 78. Here, the ultimate propriety of Mr. Marentette's termination, both under the Article 78 substantial evidence standard and the Federal constitutional Fourteenth Amendment standards were already decided by the Fourth Department, the appellate division. And there's really been no argument by Mr. Marentette that he didn't have a full and fair opportunity to litigate that matter. There was a motion for a preliminary injunction before the Fourth Department. There were two briefs submitted on behalf of the Petitioner. There was oral argument. And it's frankly difficult for me to extrapolate a step that they could have taken before the Fourth Department in the Article 78 proceeding that would have been a more full and fair opportunity to address this issue before that Court. There really, I believe, is no argument that a decision by an appellate division in the State of New York in an Article 78 proceeding where they applied the correct standard of review could be constitutionally infirm. I think the plaintiff is attempting to use that argument to almost turn this appeal into an appeal from the Fourth Department's decision. But respectfully, a 1983 action is not a mechanism for a plaintiff who was unsuccessful in an Article 78 proceeding to essentially appeal to Federal court. That decision, because it was fully litigated, it was decided against the Petitioner, and he had a full and fair opportunity to litigate that, is now binding and collaterally stops him from attempting to raise that issue before this Court. I won't belabor, Your Honors, with our arguments regarding the plaintiff's misunderstanding of the Fourth Department's decision. We believe it's very clear that this issue was clearly litigated, clearly decided, and that that decision was material, because otherwise the determination of the City of Canandaigua would have been overruled if there had been a Fourth Department, if the Fourth Department had concluded that there had been a Fourteenth Amendment violation. In an abundance of caution, the district court analyzed the property interest argument, because by using the word stigma in the Fourth Department's decision, that was clearly and unambiguously a rejection of the liberty interest argument. Although the property interest argument was implicitly rejected by the Fourth Department, the district court, in an abundance of caution, also analyzed the property interest argument, and we respectfully request that if this Court get past what we believe is the dispositive issue of collateral estoppel, that there's absolutely merit, no merit to Mr. Marentette's attorney's argument that he was entitled to a preponderance of the evidence burden of proof. The Supreme Court and this Court have already decided what process is due to a public employee who is terminated from a position in which he has a property interest. Here we've assumed for purposes of argument, based on this Court's prior case law, that there was such a property interest. The worker is entitled to notice of the charges, an explanation of the employer's proof, and an opportunity to explain his side of the story. That's it, Your Honors, respectfully. And if the United States Supreme Court in Loudermill or this Court in Locordo decided to impose a fourth requirement of a standard of proof, a burden of proof, we respectfully believe that this Court would have done so at that time. There is no such requirement. Here, Mr. Marentette was served with written charges. He answered them. He was served with another set of written charges that amended the first. He answered those. There was a full adversarial hearing at which the city presented its proof. Mr. Marentette was represented by counsel, the same counsel he's represented by on appeal. They cross-examined the city's witnesses and presented proof of their own. There were post-hearing submissions to the hearing officer, and then a written proceeding. And it's our position, therefore, that even if this Court gets to the due process argument, that regardless of whether it's viewed as a property interest claim or a liberty interest claim, Mr. Marentette received more than he was constitutionally required to receive under the Due Process Clause, and that there's no requirement under the Fourteenth Amendment that the standard of proof at his disciplinary hearing have been preponderance of the evidence. Unless the Court has any questions, I'm happy to rest my brief. Roberts. Thank you. Mr. Connell. And, Your Honors, before I begin, it was my understanding that it would be allotted additional time to deal with the motion to dismiss. So I appreciate whatever flexibility that you have with the time. That you would be allotted additional? What understanding? How did you arrive at that understanding? Just based on the way that the letter from the Court read, that prior to argument on the merits, that we would be discussing that issue. I'll give you a couple of minutes on that. Thank you. I appreciate it, Your Honor. Your Honor, Honorable Chief Justice, and may it please the Court, in addition Thanks for the promotion. Thank you. As setting aside the Section 1983 issue as to whether Mr. Marentette received adequate due process under Section 75, there are two sides to this coin, both pre-termination and post-termination. Matthews v. Eldridge, as applied in Addington v. Texas, establishes a continuum of three separate standards of review. Preponderance of the evidence being the minimum standard, clear and convincing and intermediate, and beyond a reasonable doubt as the maximum. Now, this exists within the broader arc of it going as far below as scintilla of evidence. However, the liberty interest may vary, but the importance of correctness is presumed across all three standards. And this is reflected in Justice Marshall's Loudermill concurring opinion. Did you make all these arguments in the state proceedings? It is my understanding that we did, Your Honor. All right. Could they have been decided by the state courts? Or could have been decided by the state courts? Could have been decided, Your Honor. Right. But they did not. Ultimately, the Fourth Department and then the Western District in punting on these issues essentially stated that substantial evidence was the standard. It completely fails to address the traumatic disruptions in personal and economic life that come from these sorts of decisions, that ultimately you must demonstrate not what might have happened, but what did happen in order to deprive somebody of both a property and a liberty interest, as was indicated in O'Neill v. City of Auburn. And in this case, eight of the 12 charges were dismissed. Four of them were only upheld by substantial evidence, not preponderance of the evidence. As far as the post-termination side of things, Loudermill states that even assuming that Section 75 on its face does not grant full pre-termination hearing, that there must be a full post-termination judicial review. And in this case, much of the stigma that was experienced occurred post-termination, that following Mr. Marentette's termination, news stories broke across the Internet, whether it was USA Today, the National Fire Service website, social media. It reached as far as Guam. So when we say that Mr. Marentette's denial of future job opportunities and damaged reputation reached a global level, it's no overstatement. That ultimately the Fourth Department and, again, the Western District, they discussed a registry, right? And this is an archaic standard from the 1990s prior to any creation of the Internet, that we now have vast amounts of information available to the tips of our fingers at a moment's second or, sorry, at a moment's notice. That ultimately a registry does not fully encapsulate the issue of stigma. The Fourth Department did not address this at all. There was no full judicial review of the ---- But the argument was made to the Fourth Department. Your Honor, the arguments may have been made. They were not fully considered. They were not. So are you appealing the Fourth Department's decision? No, we are no, Your Honor. We are appealing the Western District's decision and simply punting on those issues. And for the foregoing reasons, not only because ---- I assume from before you get to step down, I assume you sought review in the New York Court of Appeals of the Fourth Department's decision? Yes, we did. And the New York Court of Appeals declined to take it up? Correct, Your Honor. All right, so. And so it was ultimately taken to the Western District, and the Western District punted on this issue. We don't really take it from the Fourth Department to the Western District, but it sounds like that's what you're really doing, isn't it? Yes, Your Honor. And again, the hook here is the Section 1983 claim, that ultimately an issue of whether due process was afforded under Section 75 of the New York State Civil Service Law is not the same question as whether due process was afforded under constitutional standards. But this is the entire purpose of Section 1983. And as reflected in Licurta v. Safer, for these reasons, both because Respondent has not satisfied its burden of establishing all the elements of collateral estoppel, in addition to Mr. Marentette not receiving a full pre-termination or full post-termination due process, we respectfully request that this Court reverse the Western District. Thank you. Thank you. Thank you both for your arguments. The Court will reserve decision. Thank you. We'll hear the next case on the calendar, McDonald v. Barr in Vagelatos.